PHILLIP A. TALBERT
United States Attorney
LEE S. BICKLEY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

CHRISTOPHER J. CARLBERG
TAI S. MILDER
Trial Attorneys
U.S. Department of Justice, Antitrust Division
450 Golden Gate Avenue, Rm 10-0101
San Francisco, CA  94102
Telephone:  (415) 934-5300
Facsimile:  (415) 934-5399

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHOON FOO YONG AKA KEITH YONG,<br><br>Defendant. | CASE NO. 2:22-CR-0053 KJM<br><br>PLEA AGREEMENT<br><br>DATE:  APRIL 11, 2022<br>TIME:   9 A.M.<br>COURT:  HON. KIMBERLY J. MUELLER |

## I.   **INTRODUCTION**

### A.   **Scope of Agreement.**

The Information in this case charges the defendant Choon Foo "Keith" Yong with violations of 15 U.S.C. § 1 — participating in a bid-rigging conspiracy (Count 1) and 18 U.S.C. § 666(a)(1)(B) — bribery concerning programs receiving federal funds (Count 2).  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California and the United States Department of Justice, Antitrust Division (collectively, the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for

PLEA AGREEMENT                                1

the Eastern District of California and the United States Department of Justice, Antitrust Division, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.     Court Not a Party.**

The Court is not a party to this plea agreement.  Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the Information.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

**II.     DEFENDANT'S OBLIGATIONS**

**A.     Guilty Plea.**

The defendant will plead guilty to Counts 1 and 2 — participating in a bid-rigging conspiracy in violation of 15 U.S.C. § 1 and bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(B).  The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this

1 | Agreement generally.

2 |        1.    Waiver of Indictment:

3 |      The defendant acknowledges that under the United States Constitution he is entitled to be

4 | indicted by a grand jury on the charges to which he is pleading guilty and that pursuant to Fed. R.  Crim.

5 | P. 7(b) he agrees to waive any and all rights he has to being prosecuted by way of indictment to the

6 | charges set forth in the Information.  The defendant agrees that at a time set by the Court, he will sign a

7 | written waiver of prosecution by indictment and consent to proceed by information rather than by

8 | indictment.

9 | **B.**    **Restitution.**

10 |      The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of

11 | certain offenses.

12 |      Defendant agrees that his conduct is governed by the Mandatory Victim Restitution Act pursuant

13 | to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected

14 | by the offenses, including, but not limited to, the victims covered in the factual basis, and other victims

15 | as a result of the defendant's conduct for the offenses charged from the periods of February 2015

16 | through December 2019.  The amount of restitution will be between $800,000 and $15 million dollars.

17 | In addition, regardless of the application of the Mandatory Victim Restitution Act, defendant agrees to

18 | pay restitution pursuant to 18 U.S.C. § 3663(a)(3) to the victims of the offenses in an amount between

19 | $800,000 and $15 million dollars.

20 |      Defendant agrees that all criminal monetary penalties imposed by the court, including restitution,

21 | will be due in full immediately at time of sentencing and subject to immediate enforcement by the

22 | government.  Defendant agrees that any payment schedule or plan set by the court is merely a minimum

23 | and does not foreclose the United States from collecting all criminal monetary penalties at any time

24 | through all available means.

25 |      Defendant further agrees that he will not seek to discharge any restitution obligation or any part

26 | of such obligation in any bankruptcy proceeding.

27 |      Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets

28 | without prior written consent of the government, except that the defendant may sell, transfer, or convey

PLEA AGREEMENT                3

1    personal property (including used vehicles and personal items, but not financial instruments, ownership

2    interests in business entities, or real property) with an aggregate value of less than $5,000.

3         Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the

4    Court.

5         **C.**    **Fine.**

6         The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a

7    fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively

8    prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury

9    to the Probation Officer and the government in advance of the issuance of the draft Presentence

10    Investigation Report, along with supporting documentation. The government retains the right to oppose

11    the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered

12    by the Court, up to the statutory maximum fine for the defendant's offenses.

13         **D.**    **Special Assessment.**

14         The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering

15    a check or money order payable to the United States District Court to the United States Probation Office

16    immediately before the sentencing hearing. The defendant understands that this plea agreement is

17    voidable at the option of the government if he fails to pay the assessment prior to that hearing.

18         **E.**    **Violation of Plea Agreement by Defendant/Withdrawal of Pleas.**

19         If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea,

20    or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the

21    government elects to void the agreement based on the defendant's violation, the government will no

22    longer be bound by its representations to the defendant concerning the limits on criminal prosecution

23    and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or

24    providing or procuring any statement or testimony which is knowingly false, misleading, or materially

25    incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct

26    constituting obstruction of justice. Varying from the stipulated Guidelines application or agreements

27    regarding arguments as to 18 United States Code § 3553, as set forth in this agreement, personally or

28    through counsel, also constitutes a violation of the plea agreement. The government also shall have the

PLEA AGREEMENT                                    4

1  right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; and (2) to file any

2  new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be

3  subject to prosecution for any federal criminal violation of which the government has knowledge.  The

4  decision to pursue any or all of these options is solely in the discretion of the government.

5      By signing this plea agreement, the defendant agrees to waive any objections, motions, and

6  defenses that the defendant might have to the government's decision.  Any prosecutions that are not

7  time-barred by the applicable statute of limitations as of the date of this plea agreement may be

8  commenced in accordance with this paragraph, notwithstanding the expiration of the statute of

9  limitations between the signing of this plea agreement and the commencement of any such prosecutions.

10  The defendant agrees not to raise any objections based on the passage of time with respect to such

11  counts including, but not limited to, any statutes of limitation or any objections based on the Speedy

12  Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as

13  of the date of this plea agreement.  The determination of whether the defendant has violated the plea

14  agreement will be under a probable cause standard.

15      In addition, (1) all statements made by the defendant to the government or other designated law

16  enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

17  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

18  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

19  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

20  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

21  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

22  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

23      **F.**   **Forfeiture.**

24      The defendant agrees to forfeit to the United States voluntarily and immediately all of his right,

25  title, and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

26  U.S.C. § 2461(c).  Those assets include, but are not limited to, the following:

27      1.     Approximately $14,730.00 in U.S. Currency.

28  The defendant agrees that the listed asset constitutes property, real or personal, derived from

PLEA AGREEMENT                              5

1  proceeds traceable to a violation of 18 U.S.C. § 666(a)(1)(B).

2      The defendant agrees to fully assist the government in the forfeiture of the listed asset and to take

3  whatever steps are necessary to pass clear title to the United States.  The defendant shall not sell,

4  transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the above-listed

5  asset.

6      The defendant agrees not to file a claim to any of the listed property in any civil proceeding,

7  administrative or judicial, which may be initiated.  The defendant agrees to waive his right to notice of

8  any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a

9  claim in that forfeiture proceeding.

10      The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of

11  assets.  The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses

12  to the forfeiture of these assets in any proceeding.  The defendant agrees to waive any jeopardy defense

13  and agrees to waive any claim or defense under the Eighth Amendment to the United States

14  Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States,

15  the State of California or its subdivisions.  The defendant waives oral pronouncement of forfeiture at the

16  time of sentencing, and any defenses or defects that may pertain to the forfeiture.

17      **G.**    **Asset Disclosure.**

18      The defendant agrees to make a full and complete disclosure of his assets and financial

19  condition, and will complete the United States Attorney's Office's "Authorization to Release

20  Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change

21  of plea, including supporting documentation.  The defendant also agrees to have the Court enter an order

22  to that effect.  The defendant understands that if he fails to complete truthfully and provide the described

23  documentation to the United States Attorney's office within the allotted time, he will be considered in

24  violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E

25  above.

26      **H.**    **Agreement to Cooperate.**

27      The defendant agrees to cooperate fully with the government and any other federal, state, or local

28  law enforcement agency, as directed by the government.  As used in this plea agreement, "cooperation"

PLEA AGREEMENT                                    6

1 requires the defendant:  (1) to respond truthfully and completely to all questions, whether in interviews,

2 in correspondence, telephone conversations, before a grand jury, or at any trial or other court

3 proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the

4 defendant's presence is requested by the government or compelled by subpoena or court order; (3) to

5 produce voluntarily any and all documents, records, or other tangible evidence requested by the

6 government; (4) not to participate in any criminal activity while cooperating with the government; and

7 (5) to disclose to the government the existence and status of all money, property, or assets, of any kind,

8 derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal

9 activities or the illegal activities of any conspirators.

10                              **III.       THE GOVERNMENT'S OBLIGATIONS**

11           **A.      Other Charges.**

12           The government agrees not to bring any other charges arising from the conduct outlined in the

13 Factual Basis attached hereto as Exhibit A, except if this agreement is voided as set forth herein, or as

14 provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), III.B.3

15 (Reduction of Sentence for Cooperation), VI.B (Stipulations and Estimates Affecting Guideline

16 Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

17           **B.      Recommendations.**

18                   1.      Incarceration Range.

19           The government will recommend that the defendant be sentenced to the low end of the

20 applicable guideline range as determined by the Court.

21                   2.      Acceptance of Responsibility.

22           The government will recommend a two-level reduction (if the offense level is less than

23 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if

24 the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. §

25 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of

26 the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging

27 in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the

28 preparation of the pre-sentence report or during the sentencing proceeding.

PLEA AGREEMENT                        7

3.      Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if he provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1.  The defendant understands that he must comply with paragraph II.H and not violate this plea agreement as set forth in paragraph II.E herein.  The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands that the government may recommend a reduction in his sentence of less than 50% or no reduction at all, depending upon the level of assistance the government determines that the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion.  In particular, the defendant agrees not to try to file a motion to withdraw his guilty plea(s) based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following sentencing, the government may move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

**C.      Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.   ELEMENTS OF THE OFFENSE

### A.   Bid Rigging.

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the first offense to which the defendant is pleading guilty, bid rigging in violation of 15 U.S.C. § 1:

First, a bid-rigging conspiracy to eliminate, reduce, or interfere with competition for California Department of Transportation (Caltrans) construction contracts conducted by bid existed at the times alleged in the Information;

Second, the defendant knowingly became a member of that conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, the bid-rigging conspiracy substantially affected interstate trade or commerce or occurred within the flow of interstate trade or commerce.

### B.   Bribery Concerning Programs Receiving Federal Funds.

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the second offense to which the defendant is pleading guilty, bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(B):

First, at the times alleged in the Information, the defendant was an agent of Caltrans, a California state agency;

Second, at the times alleged in the Information, Caltrans received federal benefits in excess of $10,000 in any one-year period;

Third, the defendant accepted and agreed to accept something of value from one or more persons;

Fourth, the defendant acted corruptly and with the intent to be influenced or rewarded in connection with the business, transaction, or series of transactions of Caltrans; and

Fifth, the value of the business, transaction, or series of transactions to which the payment was related—to wit, Caltrans construction contracts—was at least $5,000.

The defendant fully understands the nature and elements of the crimes charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has

PLEA AGREEMENT

9

1  discussed them with his attorney.

2  **V.    MAXIMUM SENTENCE**

3  **A.    Maximum Penalty.**

4  The maximum sentence that the Court can impose for bid rigging in violation of 15 U.S.C. § 1 is

5  10 years of incarceration, a fine of $1,000,000 or twice the gross pecuniary gain to the defendant or

6  twice the gross pecuniary loss resulting from the offense, a three-year period of supervised release, and a

7  special assessment of $100.  The maximum sentence that the Court can impose for bribery concerning

8  programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(B) is 10 years of incarceration, a

9  fine of $250,000 or twice the gross pecuniary gain to the defendant or twice the gross pecuniary loss

10  resulting from the offense, a three-year period of supervised release, and a special assessment of $100.

11  By signing this plea agreement, the defendant also agrees that the Court can order the payment of

12  restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the

13  restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading

14  guilty.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present

15  or future bankruptcy proceeding any restitution imposed by the Court.

16  **B.    Violations of Supervised Release.**

17  The defendant understands that if he violates a condition of supervised release at any time during

18  the term of supervised release, the Court may revoke the term of supervised release and require the

19  defendant to serve up to two additional years imprisonment.

20  **VI.    SENTENCING DETERMINATION**

21  **A.    Statutory Authority.**

22  The defendant understands that the Court must consult the Federal Sentencing Guidelines and

23  must take them into account when determining a final sentence.  The defendant understands that the

24  Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

25  Sentencing Guidelines and must take them into account when determining a final sentence.  The

26  defendant further understands that the Court will consider whether there is a basis for departure from the

27  guideline sentencing range (either above or below the guideline sentencing range) because there exists

28  an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

PLEA AGREEMENT                                      10

consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

      **B.**      <u>**Stipulations and Estimates Affecting Guideline Calculation.**</u>

      The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

      1.      Base Offense Level:  14

      The parties agree that the defendant was a public official within the meaning of U.S.S.G. § 2C1.1(a).

      2.      Multiple Bribes:      +2

      The parties agree that the defendant was paid and received more than one bribe in connection with the offense conduct.  U.S.S.G. § 2C1.1(b)(1).

      3.      Value of Benefit Received in Return for Bribe:      +14

      The parties agree that the value of the benefit received in return for payment with respect to the defendant's conduct was over $550,000.  Accordingly, the parties stipulate that the base level is increased by 14.  U.S.S.G. § 2C1.1(b)(2); U.S.S.G. § 2B1.1(b)(1)(H); U.S.S.G. § 2C1.1, Appl. Note 3.

      4.      Adjusted Offense Level:  30

      5.      Acceptance of Responsibility:  See paragraph III.B.2 above

      6.      Criminal History:  The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.

      7.      Estimated Sentencing Range:   70-87 month in prison (The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.)

      8.      Departures or Other Enhancements or Reductions:

      The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's cooperation (§ 5K1.1) or post-plea obstruction of justice (§ 3C1.1). Both parties agree not to move for, or argue in support of, any departure from the Sentencing

1  Guidelines, or any deviance or variance from the Sentencing Guidelines under <u>United States v. Booker</u>,

2  543 U.S. 220, 125 S.Ct. 738 (2005).

3  The defendant is free to recommend to the Court whatever sentence he believes is

4  appropriate under 18 U.S.C. § 3553(a).  The government will recommend that the defendant be

5  sentenced to the low end of the applicable guideline range as determined by the Court.

6  **VII.    <u>WAIVERS</u>**

7  **A.    <u>Waiver of Constitutional Rights.</u>**

8  The defendant understands that by pleading guilty he is waiving the following constitutional

9  rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

10  be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative

11  defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of

12  conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to

13  testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be

14  compelled to incriminate himself.

15  **B.    <u>Waiver of Appeal and Collateral Attack.</u>**

16  The defendant understands that the law gives the defendant a right to appeal his guilty plea,

17  conviction, and sentence.  The defendant agrees as part of his plea(s), however, to give up the right to

18  appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

19  exceed the statutory maximum(s) for the offenses to which he is pleading guilty.  The defendant

20  understands that this waiver includes, but is not limited to, any and all constitutional and/or legal

21  challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which

22  defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts

23  attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant

24  specifically gives up the right to appeal any order of restitution the Court may impose.

25  Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

26  one of the following circumstances occurs: (1) the sentence imposed by the district court exceeds the

27  statutory maximum; and/or (2) the government appeals the sentence in the case.  The defendant

28  understands that these circumstances occur infrequently and that in almost all cases this Agreement

PLEA AGREEMENT                                         12

1    constitutes a complete waiver of all appellate rights.

2           In addition, regardless of the sentence the defendant receives, the defendant also gives up any

3    right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

4    aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

5           Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever

6    attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any

7    of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E

8    herein.

9           **C.      Waiver of Attorneys' Fees and Costs.**

10          The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

11   119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

12   investigation and prosecution of all charges in the above-captioned matter and of any related allegations

13   (including without limitation any charges to be dismissed pursuant to this plea agreement and any

14   charges previously dismissed).

15          **D.      Waiver of Venue**

16          The defendant understands that as to each count charged against him, the law gives him a right to

17   a trial in the state and district where the count was allegedly committed.  To the extent it is applicable,

18   the defendant agrees to waive this right and any and all objections as to venue for the charges filed in

19   this case.

20          **E.      Impact of Plea on Defendant's Immigration Status.**

21          Defendant recognizes that pleading guilty may have consequences with respect to his

22   immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes

23   are removable offenses, including offenses to which the defendant is pleading guilty.  The defendant and

24   his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an

25   aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 U.S.C. §

26   1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings

27   to avoid or delay removal, it is virtually certain that defendant will be removed if he is not a citizen of

28   the United States.  Removal and other immigration consequences are the subject of a separate

PLEA AGREEMENT                                    13

1 proceeding, however, and defendant understands that no one, including his attorney or the district court,

2 can predict to a certainty the effect of his conviction on his immigration status.  Defendant nevertheless

3 affirms that he wants to plead guilty regardless of any immigration consequences that his plea may

4 entail, even if the consequence is his automatic removal from the United States.

## VIII.    ENTIRE PLEA AGREEMENT

6      Other than this plea agreement, no agreement, understanding, promise, or condition between the

7 government and the defendant exists, nor will such agreement, understanding, promise, or condition

8 exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

9 counsel for the United States.

## IX.    APPROVALS AND SIGNATURES

11 **A.    Defense Counsel.**

12      I have read this plea agreement and have discussed it fully with my client.  The plea agreement

13 accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to

14 plead guilty as set forth in this plea agreement.

15 Dated:  **3-8-22**

16 THOMAS JOHNSON
Attorney for Defendant

18 **B.    Defendant:**

19      I have read this plea agreement and carefully reviewed every part of it with my attorney.  I

20 understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully

21 understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

22 case.  No other promises or inducements have been made to me, other than those contained in this plea

23 agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.

24 Finally, I am satisfied with the representation of my attorney in this case.

25 Dated:  **3|10|22**

27 CHOON FOO YONG AKA KEITH YONG
Defendant

PLEA AGREEMENT              14

1    **C.   <u>Attorneys for United States:</u>**

2    I accept and agree to this plea agreement on behalf of the government.

3    Dated:
          3/16/22
4

5                                              PHILLIP A. TALBERT
                                               United States Attorney

6
                                               _LEE S. Bickley_____
                                               LEE S. BICKLEY
6                                              Assistant United States Attorney

7

8

9    Dated: 3/3/2022
10                                             U.S. DEPARTMENT OF JUSTICE
                                               ANTITRUST DIVISION
11
                                               _Chris Carlberg_____
12                                             CHRISTOPHER J. CARLBERG
                                               TAI S. MILDER
13                                             Trial Attorneys

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                          15

**EXHIBIT "A"**

**Factual Basis for Plea**

The defendant, Choon Foo Yong (AKA Keith Yong), worked at the California Department of Transportation ("Caltrans") from October 1990 to December 2019. At all relevant times, Yong was a Senior Transportation Engineer in the Maintenance and Operations Division for Caltrans, and Caltrans was an agency of the State of California. As such, Yong was a public official. Yong's job responsibilities included acting as a Contract Manager for contracts to perform improvement and repair work on Caltrans's maintenance facilities and bridge toll buildings in Caltrans's District 4. The improvement and repair contracts that Yong managed were awarded by Caltrans's Division of Procurement and Contracts, which is located in Sacramento, California.

**Bid Rigging**

From in or about April 2015 and continuing through in or about December 2019, in the Eastern District of California and elsewhere, Yong knowingly entered into and engaged in a combination and conspiracy to suppress and eliminate competition by rigging bids for improvement and repair contracts awarded by Caltrans.

At all relevant times, Caltrans commonly utilized a competitive bidding process to award contracts for the acquisition, repair, or improvement of Caltrans facilities. For most contracts with an estimated value of greater than $4,999 but less than $314,000 (that limit was subject to change), the assigned Contract Manager was responsible for compiling a list of eligible companies that would be invited to bid. The process required that Caltrans obtain at least two bids from qualified bidders before awarding the contract to the lowest bidder.

Yong, working with Contractor A, Contractor B, and other co-conspirators, thwarted the competitive bidding process for Caltrans contracts described above on numerous occasions in order to ensure that companies controlled by co-conspirators submitted the winning bid and would be awarded the contract. Yong would give co-conspirator contractors advance notice of contracts that would be coming up for bid and coordinated with them about which bidders should be invited to bid. Yong would then submit the agreed upon bidders' names—which always included Contractor A—to other contracting personnel at Caltrans as those who would be invited to bid. Next, the co-conspirators who were selected to bid colluded to determine who would submit a non-competitive high bid (AKA a "sham bid") so that Contractor A's company or another co-conspirator's company would win the contract. At times, Contractor A and others working at his direction drafted and submitted other bidders' sham bids. Finally, Contractor A would pay money or otherwise provide benefits to the co-conspirator bidders who helped submit sham bids. The co-conspirators also paid Yong as described further below. This scheme allowed Contractor A's company or another designated company to win the Caltrans contracts at inflated prices.

Yong communicated with Contractor A and Contractor B about which companies should be invited to bid so that bids would only be submitted by co-conspirators. For example, in an email dated September 1, 2017, Yong emailed Contractor A asking for the licensing information for certain companies "and any company you think should be on the list," so he could send it to Caltrans to process the invitations to bid. Yong asked that the information be sent to his personal email address (not his

Caltrans employee email) to evade detection by Caltrans.  In an email dated September 4, 2017, Yong reiterated the same request to Contractor A and Contractor B.  Contractor B responded with the licensing information for the company he controlled and his associate's company that should be invited to submit bids.

Yong was introduced to Contractor A on or before early 2015 by Caltrans Employee A, who told Yong he could make money through bid-rigging agreements with Contractor A.  Thereafter, Caltrans Employee A worked with Yong to direct Caltrans contracts that Yong managed to Contractor A and their co-conspirators.  For example, Caltrans Employee A would assist Yong in selecting companies controlled by co-conspirators to receive invitations to bid on Caltrans projects and approve no-bid purchase orders for inflated amounts that were submitted by companies controlled by co-conspirators.  Yong paid Caltrans Employee A $500 per month for her involvement through at least as late as early 2017.  The $500 per month Yong paid Caltrans Employee A was paid in cash from what he was given by Contractor A.

The business activities of the co-conspirators in connection with the submission of bids to Caltrans and the resulting contracts for improvement and repair projects at Caltrans facilities that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.  For instance, payments made by Caltrans for work performed under the contracts that were subject to the conspiracy traveled in interstate commerce.  Also, co-conspirators traveled across state lines to participate in the conspiracy.  Further, co-conspirators used out-of-state insurance and bonding companies when bidding for Caltrans contracts.  Additionally, several of the affected contracts were to perform work on bridge toll booths and other highway maintenance buildings located on or near interstate highways.

**Bribery**

Beginning in or about February 2015 and continuing through in or about December 2019, in the Eastern District of California and elsewhere, Yong, while employed as an agent of Caltrans, corruptly received payments and other benefits for his actions in the bid-rigging conspiracy and for directing other Caltrans contracts to co-conspirators.  In addition to the bid-rigged contracts, Yong also directed several no-bid contracts that were awarded on an emergency basis to companies controlled by co-conspirators.  Yong had an agreement with co-conspirators that Yong would receive 10% or more of the value of Caltrans contracts subject to the scheme.  The contracts that Yong corruptly influenced and that were awarded to co-conspirators by Caltrans's Division of Procurement and Contracts in Sacramento, California were cumulatively worth in excess of $8 million.  In accepting bribes, Yong intended to be influenced and rewarded in connection with the business and series of Caltrans contracts he directed to Contractor A, Contractor B, and other co-conspirators.

Yong received the bribes from co-conspirators in the form of cash payments, wine, furniture, and remodeling services on his home.  The total value of the payments and benefits Yong received from February 2015 to December 2019 exceeded $800,000.  Specific examples include:
- From approximately April 2015 to approximately November 2017, Contractor A directed his employees to perform over $130,000 worth of remodeling and construction work at Yong's house.

PLEA AGREEMENT                        A-2

- On or about March 8, 2018, Yong received $37,300 in cash on behalf of the company controlled by Contractor B.
- On or about June 28, 2018, Yong received $90,000 in cash on behalf of the company controlled by Contractor A.
- On or about August 24, 2018, Yong received $96,000 in cash on behalf of the company controlled by Contractor A.
- On or about July 26, 2019, Yong received $60,000 in cash on behalf of the company controlled by Contractor A.
- On or about December 18, 2019, Yong received over $25,000 in cash on behalf of the company controlled by Contractor A.

Yong communicated with Contractor A and Contractor B about the bribes that they agreed to pay him in exchange for his actions in the bid-rigging conspiracy and for directing other Caltrans contracts to them. For example, in an excerpt from an email dated January 18, 2018, Contractor A wrote to Yong: "I told [Contractor B] he needs to pay you, he said he was going to wait until you asked him directly." Also, on or around January 18, 2018, Yong sent an email to Contractor B, and copied Contractor A, asking for the "commission" payment owed to him related to two specific Caltrans contracts awarded to a company controlled by Contractor B.

Caltrans is an agency of the State of California that manages and maintains the state's highways, freeways, bridges, and other aspects of public transportation. Caltrans is funded by federal, state, and local taxes, fees, and assessments. For each fiscal year from 2015 through 2020 (October 1, 2014, through September 30, 2020), Caltrans received federal benefits in excess of $10,000, from multiple federal sources. For example, for each fiscal year 2015 through 2020, Caltrans received over $3 billion from the Federal Highway Administration.

In conducting his crime of bribery, Yong committed offenses against property within the meaning of the Mandatory Victims Restitution Act and Caltrans suffered pecuniary loss. Yong's actions deprived Caltrans of a property interest in the form of overpayments made to Contractor A, Contractor B, and other co-conspirators for which Caltrans received no consideration. Caltrans suffered at least $800,000 in loss due to Yong's conduct.

*****

I, Choon Foo Yong, also known as Keith Yong, have carefully reviewed the above factual basis for this plea with my attorney. I agree that all the facts set forth therein are true and correct as it concerns my conduct, and that these facts satisfy the elements of the offenses to which I am pleading guilty.

Dated:   3/10/22

CHOON FOO YONG AKA KEITH YONG